(No. 6111.  March 9, 1935.)

EDGAR F. LESSINGER, Doing Business Under the Name and Style of LESSINGER PLUMBING & HEATING COMPANY, Respondent, v. MARY BROWN, W. G. BISSELL, BRANCH BIRD and CHAS. SHOULTS, Executrix and Executors Under the Will of ROBERT C. BROWN, Deceased, Appellants.

[42 Pac. (2d) 473.]

Bissell & Bird, for Appellants.

James H. Hawley, for Respondent.

HOLDEN, J. — For several years prior to his death, Robert C. Brown was engaged in the plumbing and heating business at Gooding, Idaho, using the trade name of Gooding Heating & Plumbing Company, and Edgar F. Lessinger was engaged in the same business at Boise, Idaho, under the name of Lessinger Plumbing & Heating Company. Brown and Lessinger were friendly competitors. During Brown's lifetime, they frequently purchased material from one another, and rendered assistance to each other on various personal and business projects. Each reposed full con-

fidence in the business honesty and integrity of the other, with the result that the various transactions between the parties, involving the purchase of material by one from, and sales to, the other, were conducted in a loose manner.

October 28, 1930, Brown and Lessinger reached an oral agreement to the effect that thereafter Brown would not operate his business in the territory west of Glenns Ferry, and that Lessinger would purchase from Brown certain material which Brown then had stored in a storeyard at Boise. While not important, in our view of the case, there is some uncertainty in the evidence as to whether Brown sold the material to Lessinger for a lump sum of $7,000, or, as contended by Lessinger, under an oral agreement that he would take the material from the storeyard as he needed it, and list and "price" it upon the basis of the manufacturer's discount.

September 23, 1931, an account stated and agreed upon between Brown and Lessinger fixed the balance due Brown at $238.26, as of October 28, 1930. Whereupon Lessinger gave Brown a check for the sum of $5,000. The settlement of the accounts between the parties did not include or cover purchases and sales of material from one to the other between October 28, 1930, and September 23, 1931, nor, of course, after September 23, 1931.

March 19, 1932, Lessinger made a verified application to the National Surety Company for a bidder's bond on a job for a veterans' hospital at Roseburg, Oregon. It appears that both Lessinger and Brown were in the office of the agents of the company at Boise, and that both made sworn financial statements on forms supplied by the Surety Company. At the time the financial statements were made, Brown and Lessinger contemplated handling that job as partners. The parties talked over and discussed the financial statements with each other, after which the statements were made up and sworn to. In his financial statement, Lessinger stated his indebtedness to Brown at that time to be the sum of $2,530.57. And respondent Lessinger testified that in March, 1932, he made a verified federal income tax

return, in which he set his indebtedness to Brown at the sum of $2,000.

Mary C. Brown, widow of the deceased, testified that shortly before the death of her husband, which occurred May 21, 1932, at a Boise hospital, Lessinger told her, as she was grieving as to where she could get some money, "Don't worry, I owe you around two thousand dollars," which Lessinger denied, stating that he figured that he owed the deceased, but did not say just how much. Later, October 8, 1932, at the office of respondent Lessinger in Boise, Mrs. Brown and William M. Burns told the respondent that they were under the impression that he owed Mrs. Brown about $1,800, which amount took into account a remittance made by Lessinger to her while she was in California, to which respondent replied, "No, it was eleven hundred." Respondent also denied that statement, saying that no figures were mentioned, and, in substance, that he believed he owed the estate some money. Mr. Burns asked respondent to render a statement of the Brown account, and, pursuant to such request, respondent, a few days later, rendered a statement, which showed that instead of respondent being indebted to the Brown estate in any amount whatever, the estate was indebted to Lessinger in the sum of $951.27. Thereafter, November 25, 1932, a claim for that amount was presented to the executors of the estate. April 19, 1933, a bill of particulars was demanded by the estate, and supplied by Lessinger, and filed April 29, 1933. It, too, showed a balance of $951.27 due respondent.

The executors rejected the claim for $951.27, presented to them, and respondent brought an action upon said claim against the executors to recover that amount. The executors answered the Lessinger complaint, denying the estate was indebted to respondent in any sum or amount, and filed a cross-complaint for the recovery of $2,361.58. Respondent answered the cross-complaint, denying he was indebted to the estate in any amount. At the beginning of the trial, leave was asked by respondent, and granted by the court, to amend respondent's complaint, by reducing the amount

sought to be recovered from $951.27 to $675.86, a reduction of $275.41, it being explained that respondent had overlooked giving Brown credit for a certain item.

Both the main controversy and the cross-action were tried to the court, sitting without a jury. The court found against the respondent in his action against the Brown estate, and against the estate in its cross-action against the respondent. And, accordingly, judgment was entered as follows:

"It is hereby ordered, adjudged, and decreed that the plaintiff take nothing by reason of his complaint on file herein, that the defendants recover their costs in this case made and expended, and that the defendants and cross-complainants take nothing by reason of their cross-complaint on file herein."

The Brown estate appeals from that part of the judgment decreeing that the estate take nothing by reason of its cross-complaint. No appeal from the judgment was taken by the respondent, so far as it affected him, so that we are not here concerned with respondent's action against the estate, nor with any of the proceedings therein, nor the judgment of the trial court in relation thereto.

Several errors are assigned by appellants. However, upon a full and careful examination of the record, and the law applicable thereto, we have concluded that the question presented by the following assignment, is decisive:

"That finding of fact No. 6 (hereinafter quoted), being only a conclusion of law, is insufficient to support the judgment upon the cross-complaint in favor of the cross-defendants and against cross-complainants."

In the cross-action, the trial court found, as a conclusion of law:

"That there is insufficient properly admissible and competent evidence before the court in this cause to justify a decision in favor of defendants (cross-complainants below and appellants here) on their cross-complaint."

The evidence in support of the cross-complaint, briefly, is to the effect: That in March, 1932, both Brown and Lessinger made verified applications to the National Surety

Company for a bidder's bond; that, among other things, the Lessinger application contained the statement that he was indebted to Brown in the sum of $2,530.57; that at the time the applications were made, Brown and Lessinger discussed them with each other, and "talked them over"; that in March, 1932, Lessinger made a sworn federal income tax return, in which he set down his indebtedness to Brown at the sum of $2,000; that in explanation of the amount of the debt due Brown, as fixed in his federal income tax return, Lessinger testified: "I estimated that I owed him (Brown) around two thousand dollars. It is estimated only. I didn't want to show that I didn't owe him anything. I would rather make it more for the purpose of cutting down on my income tax return. That was the reason for the two thousand dollars and my income tax return will show two thousand dollars set up and not $2,530.57." And as a further explanation of the fact that respondent, in his financial statement, fixed the amount he was indebted to Brown at exactly $2,530.57, he was asked by his counsel: "Q. Can you account for the odd figures, the difference, how did it get in there? A. Just to make it look as though it was an exact amount." That Brown died May 21, 1932, at Boise; that shortly prior to the death of Mr. Brown, at a Boise hospital, while his wife, Mary Brown, "was grieving as to where she could get some money," Lessinger said to her: "Don't worry, I owe you two thousand dollars." And, during the trial of the case, Lessinger was asked: "Q. You say you don't know why you accepted that figure of $2,530.57; whether you got it from Mr. Brown or what? A. I thought I got it from his statement. Q. You accepted his statement as correct at that time? A. As substantially correct. Q. And at that time you and Mr. Brown agreed, and you put that agreement in writing, that you owed him that amount of money, isn't that true? A. Yes."

Lessinger's testimony that on March 19, 1932, he and Brown agreed, and that the agreement was put in writing, that he owed Brown $2,530.57, is in exact and complete harmony with his sworn application to the National Surety

Company—and, broadly, it is in harmony with his sworn federal income tax return, and in harmony with his statement to Mrs. Brown, made shortly before Mr. Brown's death. In fact, whenever the matter appears to have been mentioned either to or by Lessinger, prior to Mr. Brown's death, Lessinger admitted he was indebted to Brown. And that Lessinger and Brown talked over and discussed with each other the matter of Lessinger's indebtedness to Brown, and arrived at the exact balance due Brown, is further evidenced by the figures themselves. Brown has passed on—his lips are sealed forever—but the *figures* that Lessinger and Brown agreed to, still live; they have not changed, and those figures, though mute, bear rather convincing evidence, in and of themselves, that Lessinger and Brown agreed to the balance that Lessinger owed Brown, down to the last cent, to wit, *fifty-seven cents.*

It is rather difficult, if not impossible, to interpret, or understand, the above-quoted conclusion of law, objected to by the appellants. Was that conclusion of law levelled at the testimony and documentary evidence hereinbefore mentioned, and if not levelled at that testimony or documentary evidence, at what evidence was it levelled? Or, stated differently, did the court thereby pass and rule upon the *competency* and *admissibility* of said testimony and documentary evidence, and hold that it was incompetent and inadmissible, and then conclude that the remaining testimony and documentary evidence was insufficient to support a decision in favor of appellants, or was that conclusion of law aimed at other evidence, and did the court thereby conclude that all the evidence, including that herein mentioned, was insufficient to support a decision in favor of appellants? It is clearly defective and evasive, and insufficient to support the judgment. (*Bentley v. Kasiska,* 49 Ida. 416, 288 Pac. 897.)

We conclude that said testimony and documentary evidence was competent, material and admissible, and should have been so considered by the court.

The judgment of the trial court is reversed, and the cause remanded to the trial court to make appropriate findings and conclusions, and enter judgment accordingly. Costs to appellants.

Givens, C. J., Morgan, JJ., and Sutton, D. J., concur.

Budge, J., took no part.

ON PETITION FOR REHEARING.

(April 4, 1935.)

HOLDEN, J.—Respondent, it appears, is under the impression that this court ordered judgment against him for the sum of $2,530.57. In that he is mistaken. March 19, 1932, there was a balance due Brown from the respondent in the above-mentioned amount, as stated in the foregoing opinion. That after March 19, 1932, Lessinger paid out certain moneys for Brown's use and benefit, and that respondent is entitled to credit for those items, there is no dispute. It follows that the trial court will apply the total of such items, *pro tanto*, to the payment of the said sum of $2,530.57, make appropriate findings and conclusions, and enter judgment accordingly.

The petition for rehearing is denied.

Givens, C. J., Morgan, JJ., and Sutton, D. J., concur.

Budge, J., took no part.